UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| JAGEX LIMITED,<br><br>    PLAINTIFF,<br><br>    v.<br><br>IMPULSE SOFTWARE,<br>ERIC SNELLMAN, and<br>MARK SNELLMAN<br><br>    DEFENDANTS. | Case No. 1:10-cv-10216<br><br>Jury Trial Demanded |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiff, Jagex Limited ("Jagex") requests that the Court enter the Protective Order attached at Exhibit 1. Jagex and Defendants, Impulse Software, Eric Snellman, and Mark Snellman (collectively "Defendants"), have conferred with the intent of agreeing on a joint protective order. While the parties have been able to resolve many initial differences, the parties have been unable to resolve their differences regarding the location, and certain aspects of the manner, of the production of source code, including Jagex's single-most valuable intellectual property and business asset – the source code for its RuneScape® game.

Jagex requests that specific protections be established prior to its production of any of its source code in response to discovery requests from a party whose sole purpose is to promote in-game cheating activities that Jagex contends infringe this same

1

intellectual property. Specifically, Jagex requests that source code (produced by any party) be made available for unlimited inspection on a secure, non-networked computer in this District at outside counsel's office for the producing party or any other mutually agreeable location. Jagex's proposed protective order further provides a measure for printing out limited portions of source code for further use as needed in this matter that adequately provides the minimum security needed to sufficiently protect such valuable and irreplaceable business assets.

On February 9, 2010, Jagex filed this action against Defendants for copyright infringement, circumvention of technical measures under the Digital Millennium Copyright Act (DMCA), trademark infringement, and computer fraud and abuse. On August 25, 2010, Jagex filed an Amended Complaint to add a claim for tortious interference with contract. Defendants' filed their Answer on September 3, 2010, and their Amended Answer on November 12, 2010. Further to the initial scheduling conference, the parties have expended significant effort to reach a compromise on a joint motion for protective order, but have been unable to resolve all of the issues. At the culmination of these efforts, the only remaining portion of Jagex's proposed Protective Order that was not agreed upon between the parties is Paragraph 27, the section defining the conditions under which source code is produced in this case. Given the importance of the RuneScape® source code to Jagex's continued operation, Jagex hereby requests that the Court enter Jagex's proposed Protective Order.

**I.     Jagex's Source Code is Highly Sensitive and Confidential Information**

Federal Rule of Civil Procedure 26(c)(1) provides that a party may move for a protective order, and a court may, for good cause, issue such an order, including

"specifying terms" for the discovery, "designating the persons who may be present while the discovery is conducted," and "requiring that a trade secret or other confidential research, development or commercial information need not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(C)(1).

Source code is recognized as confidential information that is akin to a trade secret, where the code itself and technical information about the code are not readily available to the public. *See, e.g., Linkco, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 499 (S.D.N.Y. 2002); *United States v. Cox*, 73 F.Supp.2d 751, 764 n. 15 (S.D. Tex. 1999). Jagex earns approximately £11.2 million in profits per year. See Exhibit 2, Declaration of Nick Thompson, ¶ 2 (hereafter, "*Decl.*"). Jagex's source code is its single most valuable business asset, is considered to be the "family silver" of the company, and is the single largest contributing asset to Jagex's earnings. See Decl., ¶ 2. The RuneScape® source code includes the Jagex game engine and the RuneScape® scripts that run on the Game Engine, as well as the creative audiovisual aspects of the RuneScape® game. The Jagex game engine in particular is also used with additional Jagex games other than RuneScape® and it is intended that future games will run on the Jagex game engine as well. See Decl, ¶ 3. As such, the RuneScape® source code is kept strictly confidential, and is not allowed off Jagex's Cambridge, UK, campus. See Decl, ¶ 4.

Due to the critical importance to Jagex's business of its source code and the integrity and confidentiality of that source code, Jagex has established numerous security measures to ensure its protection. Jagex's internal protections include storing the source code on a separate source code computer network that is not accessible from Jagex's corporate network, and is not accessible from outside Jagex's corporate headquarters.

See Decl, ¶ 5.  Source code development and review can only be performed on dedicated machines connected to the source code computer network, and not from other machines.  See Decl, ¶ 5.  In addition, not even every employee of Jagex has access to the RuneScape® source code and, in particular, to the Jagex game engine source code.  See Decl, ¶ 7.  While approximately 67% of Jagex employees have access to the RuneScape® scripts, only approximately 4% of Jagex employees have access to the Jagex game engine source code.  See Decl, ¶ 7.  In order to access the source code, an employee must use unique login credentials, and Jagex maintains a log of each and every time the source code is accessed.  See Decl, ¶ 6-7.

Due to the number of security provisions utilized by Jagex, it would be unreasonable to allow Defendants' full, unlimited access to the RuneScape® source code when such access is not even allowed to all Jagex employees.  This is particularly true, as in the present situation, where Defendants are admitted RuneScape® cheaters and alleged infringers of Jagex's intellectual property, and have created a product that interacts with the source code of RuneScape® in such a way as to specifically enable other users of the RuneScape® game to cheat, thereby also infringing Jagex's intellectual property.  If Defendants' were allowed full, unlimited access to Jagex's source code they could be able to further develop platforms for cheating.  Even if Defendants agree that the source code is produced on an Outside Counsels' Eyes Only basis but that source code should otherwise be shipped to Defendants' counsel for unfettered review and access, such a restriction is not commensurate with the heightened protections and security that Jagex maintains on the RuneScape source code, and is not justified in this case.  Indeed, Jagex is offering, voluntarily, to permit the source code to leave its Cambridge, UK, campus *for*

4

*the first time*, in order to permit Defendants' counsel and experts to review the source code in this case.

Additionally, strict protections are needed because Defendants' have previously sought to obtain unauthorized access to Jagex's source code. A job offer entitled "Jagex Spy" and posted by "Mark", who is listed as an administrator, was posted on the Impulse Software forum on March 29, 2009. See Exhibit 3. The positing states:

> "Description: You will provide us day to day updates on the anti-botting efforts
> Key duties include: spying on the runescape anti-macro team
> Essential requirements: a current Jagex employee
> Salary: negotiable."

Posting of Mark to http://www.impsoft.net/tp/index.php/topic.11.0.html (Mar. 29, 2009, 03:54:32 PM). The only person named Mark who is an administrator of the Impulse Software web site, as far as Jagex is aware, is Defendant Mark Snellman. Due to the nature of this posting, and the highly confidential nature of the RuneScape® source code, this Court should establish the highest level of protection possible for the production of source code.

Courts and other authorities have consistently recognized the "importance of keeping source code confidential and the risks of disclosure to competitors." *United States v. Cox*, 73 F.Supp.2d 751, 764 n. 15 (S.D. Tex. 1999). *See also* Mark Koehn *Producing Source Code in Litigation*, vol. 8, no. 3, DIGITAL DISCOVERY AND E-EVIDENCE (BNA) 1, 2 (March 1, 2008) (stating that "when the discovery proponent is also a business competitor, the court should be sympathetic to all reasonable security demands.") While the Defendants in this case are not strict "competitors" of Jagex, their business objectives are directly opposed to those of Jagex. Due to the importance of keeping source code confidential, courts have consistently provided increased protections

for the production of source code. *See, e.g., Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D.Del. 1998) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."); and J. Christopher Carraway, *Discovery Issues in Patent Cases*, 982 PLI/Pat 419, 476 (2009) (stating that during discovery of source code, "severe restrictions on access are generally appropriate").

There are significant risks that arise during the production of source code. Source code can be easily copied or stolen without the proper security measures in place and, accordingly, it should be entitled to maximum protection. *See, e.g., Adobe Sys. Inc. v. Macromedia, Inc.*, 2001 WL 1414843 (D. Del. Nov. 5, 2001) (stating that the source code was "of critical importance to [defendant's] business and must be provided the highest form of protection a court can provide in the context of a particular case"). As in *Adobe*, the RuneScape® source code is of critical importance to Jagex's business because the RuneScape® source code is the single largest contributing asset to Jagex's earnings. See Decl, ¶ 2. Thus, if source code must be disclosed in this case, in accordance with the Federal Rules of Civil Procedure, the source code deserves the highest protection.

## II. Jagex's Proposed Protective Order Balances the Requirements for Discovery and the Need to Protect Sensitive Technical Information

The parties disagree regarding the location, and certain aspects of the manner, of the production of source code. Despite the source code being Jagex's single most valuable asset, Jagex is willing to make the source code indefinitely available for inspection by Defendants' counsel and experts working on their behalf. Jagex is also willing to permit the source code to be inspected *in its native form* in the United States in

this district, even though the source code has never before been permitted off of Jagex's Cambridge, UK, campus.

Jagex's proposed Protective Order states that any source code will be available for review by only SOURCE CODE QUALIFIED PERSONS on a "stand-alone" secure computer system, that has no network access, at the producing party's outside counsel's office in this District, unless another location is agreed on by the parties. No recordable media or recordable devices shall be permitted into the area containing the stand-alone secure computer system, and no computers or recordable devices may be connected to the stand-alone secure computer system. See Ex. 1, ¶ 27(b). Protective orders are frequently entered with similar limitations. Indeed, another district court has recognized the need for similar restrictions with respect to Jagex source code, and such limitations have also been incorporated into model protective orders used in the Northern District of California and the Eastern District of Texas. *See* Exhibit 4, Stipulated Protective Order at ¶27(b), *PalTalk Holdings, Inc. v. Sony Computer Entm't Am., Inc., et al.*, No. 2:09-cv-00274 (E.D. Tex. May 18, 2010)*; see also* Exhibit 5*,* Patent Local Rule 2-2 Interim Model Protective Order, Northern District of California, ¶ 9 (requiring that source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers at an office of the producing party's counsel); Exhibit 6, Standard Protective Order, Eastern District of Texas, ¶ 10 (requiring that access to source code shall be provided only on "stand-alone" computer(s), not linked to any network or Internet; the stand-alone computer may only be located at the offices of the producing party). *See also Polycom, Inc. v. Codian Ltd.*, 2007 WL 194588 (E.D. Tex. 2007) (finding unpersuasive the plaintiffs' argument that it was inconvenient

for their experts to spend time traveling, away from their resources, to review source code at the offices of the producing party's counsel).

Additionally, Jagex's proposed Protective Order ensures that no copies shall be made of the disclosed source code, whether physical, electronic, or otherwise, except for reasonable portions of the source code requested by the Receiving Party that it is believed are necessary for understanding a relevant feature of an accused product, and notes taken by the SOURCE CODE QUALIFIED PERSON that detail his/her thoughts and impressions. *See* Ex. 1, ¶ 27(g). Similar restrictions on the ability to obtain hard copies of the source code are found in the model protective orders for the Northern District of California and the Eastern District of Texas, and were also granted in the *PalTalk* protective order. *See* Ex. 4, Stipulated Protective Order at ¶27(g), *PalTalk*, No. 2:09-cv-00274 (E.D. Tex. May 18, 2010); *see also* Ex. 5, Patent Local Rule 2-2 Interim Model Protective Order, Northern District of California, ¶ 9 (requiring that Receiving party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the source code. Hard copies will be labeled HIGHLY CONFIDENTIAL – SOURCE CODE and Producing Party may challenge the amount of source code requested in hard copy form); Ex. 6, Standard Protective Order, Eastern District of Texas, ¶ 10 (requiring that receiving party may make a reasonable number of printouts of source code material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE"). Further, in certain cases even more restrictive protective orders have been entered that specify that no source code may be copied or printed without the

agreement of the producing party.  *See* Ex. 7, Stipulated Protective Order at ¶ 8, *Leader Technologies, Inc. v. Facebook, Inc.*, No. 1:08-cv-00862, ¶ 8(f) (Del. April 27, 2009).

While the model protective orders referenced above are primarily used in patent cases, source code has less relevance here than it would be in those patent cases. Specifically, the primary issue in a patent litigation is *how* the source code operates, which requires detailed analysis of the source code.  In a typical copyright infringement case, however, the primary issues with respect to source code include whether the source code contains copyrightable subject matter, proof of ownership of the source code, and substantial similarity between the copyrighted work and the alleged infringement.  Thus, any restrictions placed on source code review in this case will have less impact than those same restrictions would have in a patent matter.

With respect to copyrightable subject matter, in addition to the inspection of source code allowed by Jagex's proposed Protective Order, Jagex will also provide to Defendants, in hardcopy form under the terms of the Protective Order, the same information that would be required to be provided to the United States Copyright Office had Jagex decided to register its copyright in the RuneScape® source code.  Due to the nature of the alleged infringement in the current matter, substantial similarity will likely not be a significant issue.  The only remaining issue, proof of ownership, is not likely to be determined based on whether or not the Defendants are provided unfettered access to the source code.

With respect to the DMCA count in this case, admittedly one issue could be whether the RuneScape® source code effectively protects a right of a copyright owner under 17 U.S.C. *et seq*.  Given the nature of Jagex's source code, however, the

effectiveness of its protection will likely require insubstantial access to the source code, and equivalent information can be obtained by deposition.  Nonetheless, Jagex's proposed Protective Order makes accommodation for unlimited inspection of the RuneScape® source code by Defendants' counsel, and printouts of reasonable portions as necessary.

   Jagex believes the security measures identified in the proposed Protective Order are reasonable in view of the confidential nature of Jagex's source code.  Thus, Jagex respectfully requests that this Court enter the attached Protective Order.

                Respectfully submitted,

Dated:  December 3, 2010   By: /s/ Erin E. Bryan
                Peter McDermott (BBO No. 330760)
                Erin E. Bryan (BBO No. 675955)
                **BANNER & WITCOFF, LTD.**
                28 State Street, Suite 1800
                Boston, MA 02109-1705
                Telephone: (617) 720-9600
                Facsimile: (617) 720-9601

                Ross Dannenberg
                Christopher Roth
                **BANNER & WITCOFF, LTD.**
                1100 13th Street, NW
                Suite 1200
                Washington, DC 20005
                Telephone: (202) 824-3000
                Facsimile: (202) 824-3001
                **Attorneys for Plaintiff,**
                **Jagex Limited**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system per Local Rule 5.2(b) on December 3, 2010, upon the following interested parties:

      Terry M. Sanks (tsanks@iplawfl.com)
      Amber Davis (adavis@iplawfl.com)
   Ieuan G. Mahony (ieuan.mahony@hklaw.com)

                    /s/ Erin E. Bryan